TOBRINER, J.
 

 Applicant Coakley, a California resident, having been injured while working in Utah for Core Labora
 
 *10
 
 t-ory,- -Incorporated, has applied for benefits under the California • workmen’s compensation statute. The referee found that the parties entered into a contract of employment in California, but rescinded it and agreed to a new one when applicant reported to the jobsite in Wyoming. Upon reconsideration. the board found that the contract under which applicant wás working at the time of injury had been formed in 'California. Accordingly, the board held applicant to be entitled to benefits under tile California statute. (Lab. Code, §§ 3600.5, 5305.)
 

 We have concluded that the board’s finding rests upon substantial evidence because (a) applicant accepted in California the offer of employment transmitted by Columbine Employment Service (hereinafter Columbine); (b) Columbine', for the purpose of transmitting an offer of employment to applicant; served as the agent for Core Laboratory, Incorporated (hereinafter Core), and (e) applicant’s execution of written employment forms and his assumption of specific .duties not detailed in the oral agreement upon reporting at .the jobsite did not constitute a rescission of the contract. We first set forth the reasons why we resolve these issues according to California law.
 

 Core engages in drillings and analyses to determine whether -a designated area contains oil. The western division of Core covers several states including California, and main‘tains It's headquarters in Denver, Colorado. Aiter applicant’s registration with Columbine at Denver, the agency sent him to interview J.' D. Harris, Core’s western division manager. While applicant was returning to his home" in California, J. .D. .Harris phoned,Walker Harris of 'Columbine and requested him,to call applicant and offer him a position with Core.
 

 WaHtey; Harris phoned applicant' in California. After applicant accepted the offer, Walker Harris so informed Core, but Core objected to the reporting date suggested by applicant. Thereupon -Harris again- called' applicant; applicant agreed to report to Wyoming on .the date requested by Core. At the time he called applicant, Harris testified, he was acting'“-as an authorized go-between for transmittal of [the offer].” In a letter*-written'to 'applicant!s father confirming his employment with .Gore, Core’s J'. D. Harris stated,
 
 “I
 
 later contacted Columbine Business Services and through them, offered [applicant ] /employment with Coré. ”
 

 Applicant traveled to Wyoming at his own expense and
 
 *11
 
 reported, as agreed, to the manager of Core’s Rocky Mountain district in Casper, Wyoming, on October 5, 1964. The manager assigned applicant the job of assistant engineer— mud-logging. Applicant then filled out and signed four documents which, inter alia, specified his work, covered patent rights, and required four weeks ’ notice of termination. Applicant also completed a W-2 form and took a medical examination and a driver’s test.
 

 While working as a mud-logger in Utah applicant injured his back. When in January 1965 applicant’s employment brought him to California, he worked about a week but was forced to desist. Eventually undergoing a laminectomy, he now receives medical treatment in California. Applicant has obtained benefits under Utah’s workmen’s compensation law and now seeks to increase those benefits to the level provided by California workmen’s compensation.
 

 Section 5305 of the Labor Code provides that the appeals board exercise jurisdiction over all controversies arising out of injuries suffered outside the state if the injured employee is a California resident at the time of the injury and the contract of employment is entered into in California. Section 3600.5 provides that if an employee is hired in California but injured outside California he shall receive compensation according to the laws of California. The only issue here turns on whether, within the meaning of sections 5305 and 3600.5 of the Labor Code, applicant, at the time of his injuries in Utah, was working pursuant to an employment contract made in California.
 

 At the threshold we explain why we have concluded that California law, rather than that of any involved foreign state, governs the issues of whether (1) the parties consummated the contract of employment in California, (2) the Colorado employment agency served as the agent of the employer for the limited purpose of transmitting the offer of employment to applicant, and (3) when applicant reported to the Wyoming jobsite, the parties rescinded the prior California oral employment contract and formed a new contract.
 

 California has rejected the traditional mechanical solutions to choice-of-law problems and adopted foreign law only when it is appropriate in light of the significant interests in the particular case.
 
 [1]
 
 The significance of extra-state ele
 
 *12
 
 ments varies directly with the nature of the forum’s interest in a given ease.
 
 [2]
 
 Thus, California maintains a stronger interest in applying its own law to an issue involving the right of an injured Californian to benefits under California’s compulsory workmen’s compensation act
 
 [3]
 
 than to an issue involving torts or contracts in which the parties’ rights and liabilities are not governed by a protective legislative scheme that imposes obligations on the basis of a statutorily defined status.
 
 [4]
 
 Its interest devolves both from the possibility of economic burden upon the state resulting from non-coverage of the workman during the period of incapacitation, as well as from the contingency that the family of the workman might require relief in the absence of compensation. The California statute, fashioned by the Legislature in its knowledge of the needs of its constituency, structures the appropri
 
 *13
 
 ate measures to avoid these possibilities. Even if the employee may be able to obtain benefits under another state’s compensation laws, California retains its interest in insuring the maximum application of this protection afforded by the California Legislature.
 
 (Reynolds Electrical etc. Co.
 
 v.
 
 Workmen’s Comp. Appeals Board
 
 (1966) 65 Cal.2d 429, 437-438 [55 Cal.Rptr. 248, 421 P.2d 96].)
 

 The decision as to who should be embraced within the class of the beneficiaries of workmen’s compensation constitutes a peculiar California problem. We solve that problem in the light of the legislative declaration that the workmen’s compensation provisions of the Labor Code “shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment.” (Lab. Code, § 3202.) We therefore follow the legislative mandate to construe liberally the provisions of the statute, including those defining the class of persons who are entitled to the statutory benefits, Not only do we lack any reason to apply the law of another state to this issue (Cheatham & Reese,
 
 supra,
 
 52 Colum.L.Rev. at p. 964), but California’s strong interest in the employment status of the applicant compels resolution of the place-of-eontraeting issue according to California law. (Cf.
 
 Bernkrant
 
 v.
 
 Fowler, supra,
 
 55 Cal.2d 588.)
 

 The same considerations which impel the application of California law to the issue of the formation of the oral contract of employment control our designation of “the law that most appropriately applies”
 
 (Reich
 
 v.
 
 Purcell, supra,
 
 67 Cal.2d 551, 555) to the agency and rescission issues. The “incidental question” (von Mehren & Trautman, The Law of Multistate Problems (1965 ) 439-441, 493-495) of whether Columbine acted as the agent of Core for purposes of transmitting an offer of employment to applicant bears relevance only to a determination of whether applicant comes within the class of employees entitled to the protection afforded by California’s workmen’s compensation system.
 
 [5]
 
 Resolution of this question does not, of course, affect in any way the rights and
 
 *14
 
 liabilities of persons in Colorado
 
 inter sese.
 
 Moreover, if we were to allow foreign law to control the agency question, California ’s policy of protecting injured employees in applicant’s situation could be frustrated by an employer’s use of an intermediary in a state whose agency law required a result inconsistent with the policy of our statute.
 
 [6]
 

 Finally, the issue of whether the parties extinguished the California oral employment agreement by a written Wyoming contract likewise relates only to the determination of whether applicant, when injured in Utah, was working pursuant to a California employment contract within the meaning of its compensation statute. Wyoming has no interest in the application of its contract law to this issue, while California retains a strong interest in securing the resolution of this issue pursuant to its policy of affording maximum protection to Californians injured in the course of their employment.
 
 [7]
 
 We therefore conclude that California law is “the law that most appropriately applies to [the rescission] issue”
 
 (Reich
 
 v.
 
 Purcell, supra,
 
 67 Cal.2d 551, 555) as well as to the major place-of-contracting issue and the incidental agency question.
 

 California has adopted the rule that an oral contract consummated over the telephone is deemed made where the offeree utters the words of acceptance.
 
 [8]
 
 The board
 
 *15
 
 found that the parties entered into the employment contract in California when applicant accepted the offer transmitted by Walker Harris of Columbine over the telephone. The validity of this finding must turn upon whether Columbine served as the agent of Core for at least the limited purpose of' transmitting an offer of employment to applicant. As we said in
 
 Reynolds Electrical etc. Co.
 
 v.
 
 Workmen’s Comp. Appeals Board, supra,
 
 65 Cal.2d 429, 433: “In determining the issues before us we are bound by the familiar rules that conflicts in the evidence must be resolved in favor of the respondent [board] and that the findings will not be disturbed on appeal if there is any evidence in their support.”
 

 The record amply supports the board’s finding that Columbine acted as the agent of Core in transmitting by telephone the offer of employment to applicant in California. The evidence established that J. D. Harris of Core requested Walker Harris of Columbine to call applicant in California about the opening with Core for which applicant qualified. Thus Harris of Columbine functioned “as an authorized go-between for transmittal of the offer.” Moreover, J. D. Harris’s subsequent letter to applicant’s father, confirming-applicant’s employment, states that Core offered applicant his job
 
 through
 
 Columbine. The board could reasonably infer from these facts that Core authorized Columbine as its agent to transmit Core’s offer of employment to applicant and to receive applicant’s acceptance.
 

 Indeed,
 
 Reynolds Electrical etc. Co.
 
 v.
 
 Workmen’s Comp. Appeals Board, supra,
 
 65 Cal.2d 429, governs the specific issue. In
 
 Reynolds,
 
 the out-of-state employer had consummated a collective bargaining agreement with the union which required the union to maintain a hiring hall and the employer to accept workers through other sources only if the union could not fill requests for - workers within 48 hours. The employer contacted the union in Los Angeles and requested workers for a job in Nevada. When the employee asked the union’s business agent about a job, the agent told him of one in Nevada. The employee then went to the hiring hall; there he received a referral slip which he was to give to the employer’s representative at the Nevada jobsite.
 

 The
 
 Reynolds
 
 decision upholds the board’s ruling that the parties entered into an employment contract in California. We said, “the commission was justified in concluding that the contract of hire between [the employee] and [the employer]
 
 *16
 
 was made in California on the theory that the union was the agent of [the employer] for the purpose of transmitting offers of employment to its members and [the employee] accepted [the employer’s] offer when he received his dispatch referral slip and departed for the jobsite.”
 
 (Id.
 
 at pp. 433-434.) That in
 
 Reynolds
 
 a written contractual provision required the “dual” agent to refer workers to the employer does not affect the situation here. A contract creating such an agency need not be in writing (Civ. Code, § 2309) nor supported by consideration. (Civ. Code, § 2308; see generally Seavey, Law of Agency (1964) § 18.) We therefore uphold the board’s finding that Core authorized Columbine to transmit an offer of employment to applicant and to receive applicant’s acceptance of the offer in California.
 

 Our final question turns on whether the parties rescinded the oral California employment contract and entered into a new Wyoming contract pursuant to which applicant was working at the time of his injury in Utah. The record sustains the board’s finding that applicant undertook employment in Utah pursuant to the employment offer accepted in California. That the details as to applicant’s specific duties as a geologist with Core were not designated at the time of the offer or were subsequently modified when applicant reported to the Wyoming jobsite does not alter this result.
 

 Applicant applied for the job of “Geological aid/Technieian” when he interviewed Core in Colorado. Upon arrival at the Wyoming jobsite he filled out another “Employment Application” in which he stated that he desired the job of “Technician.” He also completed other employment forms covering patent rights and requiring four weeks’ notice of termination; one of these listed his job title as “Assistant Engineer—mud-logging.” In his letter of confirmation to applicant’s father, J. D. Harris of Core stated that applicant was offered a job in Wyoming as a mud-logger. Applicant, however, testified that he thought at the time of the phone conversation that Walker Harris was transmitting an offer of employment with Core as a “core analysis technician. ”
 

 The evidence supports the board’s finding on one of two theories: first, that the California contract provided that applicant begin work for Core on October 5, 1964, in Casper, Wyoming, as a geologist at $450 per month with his specific
 
 *17
 
 duties to be determined upon his reporting at the jobsite; or second, that the California contract provided that applicant begin work for Core on October 5, 1964, in Casper, Wyoming, as a “core analysis technician’’ at $450 per month and his assumption of the duties of a mud-logger in Wyoming constituted a modification of the original contract.
 

 Both theories find substantial support in the evidence, and both accord with California contract law. First, the oral California agreement included the
 
 essential
 
 terms of the contract: the parties, time and place of employment, salary, and the general category of employment (geologist). An employment contract need not detail every condition of employment
 
 (Gordon
 
 v.
 
 Wasserman
 
 (1957) 153 Cal.App.2d 328, 329 [314 P.2d 759]). That particular terms remain undesignated does not render the original contract invalid for uncertainty. Later agreement on the unspecified terms does not rescind the original contract
 
 (Wilson
 
 v.
 
 Wilson
 
 (1950) 96 Cal.App.2d 589, 594 [216 P.2d 104]), especially if the parties ’ performance indicates that they intended to be bound by the prime agreement.
 
 (Bohman
 
 v.
 
 Berg
 
 (1960) 54 Cal.2d 787, 794-795 [8 Cal.Rptr. 441, 356 P.2d 185].) Second, an alteration of details of the contract which leaves undisturbed its general purpose constitutes a modification rather than a rescission of the contract
 
 (Grant
 
 v.
 
 Aerodraulics Co.
 
 (1949) 91 Cal.App.2d 68, 74-75 [204 P.2d 683]) ; it does “not affect the original contract, which still remains in force.”
 
 (Schlinkman
 
 v.
 
 Davis
 
 (1961) 195 Cal.App.2d 603, 605 [15 Cal.Rptr. 925].)
 

 Thus the board’s finding that the parties did not rescind in Wyoming the employment contract formed in California rests upon either of two theories of contract law, both of which are supported by substantial evidence. Hence petitioner fails to establish that at the time of injury applicant was working under a contract entered into in Wyoming.
 
 (Reynolds Electrical etc. Co.
 
 v.
 
 Workmen’s Comp. Appeals Board, supra,
 
 65 Cal.2d 429, 433-435.)
 

 Applicant, a California resident injured in the course of his employment contracted for in California, falls within the class of persons whom the Legislature intended to protect under the comprehensive California workmen’s compensation statute. The board’s ruling that the employment contract was consummated in California within the meaning of sections
 
 *18
 
 3600.5 and 5305 of the Labor Code finds support in substantial evidence and effectuates this state’s protective legislative policy.
 

 The award is affirmed.
 

 Traynor, C. J., Me Comb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.
 

 [1]
 

 Reich
 
 v.
 
 Purcell
 
 (1967) 67 Cal.2d 551 [63 Cal.Rptr. 31, 432 P.2d 727];
 
 Bernkrant
 
 v.
 
 Fowler
 
 (1961) 55 Cal.2d 588 [12 Cal.Rptr. 266, 360
 
 *12
 
 P.2d 906] ;
 
 Emery
 
 v.
 
 Emery
 
 (1955) 45 Cal.2d 421 [289 P.2d 218] ;
 
 Grant
 
 v.
 
 McAuliffe
 
 (1953) 41 Cal.2d 859 [264 P.2d 944, 42 A.L.R.2d 162]; see generally, Currie, Selected Essays in the Conflict of Laws (1963) 49, 60, 183-184; W. W. Cook, The Logical and Legal Basis of Conflict of Laws (1942) 20-21.
 

 [2]
 

 Paulsen & Severn,
 
 “Public Policy’’ in the Conflict of Laws
 
 (1956) 56 Colum.L.Rev. 969, 1007-1008.
 

 [3]
 

 “ Workmen’s compensation contemplates a substitution of the contractual rights and obligations which normally flow between worker and employer with a complete and exclusive statutory scheme based not upon contract but upon status. The relationship of employer and employee itself generates the rights and obligations; the legislation describes the content and extent of those rights and obligations.”
 
 (Noe
 
 v.
 
 Travelers Ins. Co.
 
 (1959) 172 Cal.App.2d 731, 733 [342 P.2d 976].)
 

 “ [T]he liability under workmen’s compensation acts is . . . imposed as an incident of the employment relationship .... [California has] as great an interest in affording adequate protection to this class of its population [California employees injured outside California] as to employees injured within the state.”
 
 (Alaska Packers Assn.
 
 v.
 
 Industrial Acc. Com.
 
 (1935) 294 U.S. 532, 541-543 [79 L.Ed. 1044, 55 S.Ct. 518] ; see generally, Nussbaum,
 
 Public Policy and the Political Crisis in the Conflict of Laws
 
 (1940) 49 Yale L.J. 1027, 1054-1055; Comment,
 
 The Aftermath of Babcock
 
 (1966) 54 Cal.L.Rev. 1301, 1312-1313.)
 

 [4]
 

 Currie,
 
 op. cit. supra,
 
 pp. 70-71; Paulsen & Sovem,
 
 supra,
 
 p. 981; Cheatham & Reese,
 
 Choice of the Applicable Law
 
 (1952) 52 Colum.L.Rev. 959, 961-962; Comment,
 
 Usury in the Conflict of Laws: The Doctrine of the Lex Debitoris
 
 (1967) 55 Cal.L.Rev. 123, 172-188, 250-252.
 

 “If workmen’s compensation cases presented the usual choice-of-law problem associated with tort or contract eases, it might be necessary to determine whether [the law of the place of employment] or [.the. law of the place of injury] applied.-- But, as the principles of workmen’s compensation law have- developed, no such decision is necessary.. If his situation comes within its.terms, the plaintiff, is free to choose -either statute upon which to ground his action, and he may under certain circumstances obtain benefits under both. . . . the' obligation to pay compensation is neither a substitute for older tort liability nor the outgrowth of a contract, but is a
 
 statutory regulation of the relation of employer
 
 
 *13
 

 and employee
 
 ....
 
 ”
 
 (Italics added.) (Goodrich & Seoles, Conflict of Laws (4th ed. 1964) 185-186; see also Ehrenzweig, Conflict of Laws (1962) 442, 604-605.)
 

 [5]
 

 See generally Currie,
 
 op. cit. supra,
 
 pp. 70-71; Kay,
 
 Conflict of Laws : Foreign Law as Datum
 
 (1956) 53 Cal.L.Rev. 47, 59-63; M. Traynor,
 
 Conflict of Laws: Professor Currie’s Restrained and Enlightened Forum
 
 (1961) 49 Cal.L.Rev. 845, 874-875.
 

 [6]
 

 ln
 
 Estate of Lund
 
 (1945) 26 Cal.2d 472 [159 P.2d 643, 162 A.L.R. 606], tiie major issue involved the right of plaintiff to share in a California decedent’s estate as a pretermitted heir. In order to resolve that issue, the court was required to decide the ‘1 incidental question ’ ’ whether plaintiff was the decedent’s legitimate son. Although all the acts of acknowledgment occurred before decedent became a California domiciliary, this court rejected the mechanical First Restatement rule that the law of the father’s domicile at the time of the legitimating acts controlled, and, to determine plaintiff’s status, applied the California legitimation statute. Recognizing that only California possessed an interest in whether plaintiff shared as a pretermitted heir in a California estate and that California pursued a strong policy favoring legitimation,
 
 Estate of Lund
 
 upheld plaintiff’s legitimacy even though the laws of the places of the legitimating acts did not recognize them as legally relevant.
 

 The agency question here parallels the legitimacy question in
 
 Estate of Lund:
 
 both eases involve only a determination of whether the claimant comes within a statutory class of protected persons and in both the resolution of the issue according to California law promotes California’s protective interest in the selected class. (See M. Traynor,
 
 supra,
 
 at p. 874; see also Kay,
 
 supra,
 
 at p. 61.)
 

 [7]
 

 See
 
 Rubin
 
 v.
 
 Irving Trust Co.
 
 (1953) 305 N.Y. 288 [113 N.E.2d 424] ; cf.
 
 Bernkrant
 
 v.
 
 Fowler, supra,
 
 55 Cal.2d 588, 594.
 

 [8]
 

 Bank of Yolo
 
 v.
 
 Sperry Flour Co.
 
 (1903) 141 Cal. 314, 315 [74 P. 855, 65 L.R.A. 90] ;
 
 Friedman Bag Co., Inc.
 
 v.
 
 Shrier
 
 (1961) 194 Cal. App.2d
 
 561, 565 [15
 
 Cal.Rptr. 38] ; see generally, 1 Corbin, Contracts (1963) § 78.