[Civ. No. 33044. Fourth Dist., Div. Two. June 7, 1984.]

LEDBETTER ERECTION CORPORATION et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and
JAMES SALVAGGIO, Respondents.

[Civ. No. 33046. Fourth Dist., Div. Two. June 7, 1984.]

AETNA CASUALTY AND SURETY COMPANY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
JAMES SALVAGGIO, Respondents.

**COUNSEL**

Kegel, Tobin & Hamrick, Faye E. Hagner, Stockwell, Gleason, Anderson & Harris and William H. Anderson for Petitioners.

Potts & Richman, Goldwater & Richman and William I. Richman for Respondents.

**OPINION**

**KAUFMAN, Acting P. J.**—James Salvaggio (applicant) filed two applications for workers' compensation benefits in California, alleging injury to

his lungs, low back, ears and heart arising out of two jobs in Nevada. The workers' compensation judge (WCJ) found California jurisdiction. The Workers' Compensation Appeals Board (Board) denied petitions for reconsideration. The defendants sought and this court issued a writ of review.

*Facts*

Applicant is a member of the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers (Union). Applicant's "home local" of the Union is in New Jersey, but he has a "travel card" which he can deposit with any Union local in the country and thereafter receive job referrals or placement through that local. The Union's work referral procedure requires union members to register at a union hall on the out-of-work list. Ordinarily, members are referred to jobs in the order of their registration on the out-of-work list.

At the relevant times herein, applicant was a domiciliary and resident of the State of Nevada. While living in Nevada, applicant presented his travel card at Union Local 92 located in South Gate, California, and registered on the out-of-work list. Applicant made his initial out-of-work registration in person, but he then returned to Las Vegas, Nevada, and every two weeks he reported his out-of-work status to Local 92 by mail.

Local 92 has an extensive territorial jurisdiction, including Moapa, Nevada. When they are in need of a boilermaker, employers within the territorial jurisdiction of Local 92 who are parties to the collective bargaining agreement with the Union are required to contact the local and indicate their need. The local then selects a qualified person on the out-of-work list and notifies him or her of the available job. If the notified person agrees to take the job he or she picks up a work order at the local and reports to the union steward at the jobsite. At the jobsite the employer may require satisfactory evidence of the worker's qualifications and has the right to reject a worker for good cause.

On July 31, 1981, the assistant business manager of Local 92 telephoned applicant in Nevada and advised him work was available with Ledbetter Erection Corporation at the construction site of a power plant in Moapa, Nevada. Applicant testified, "He called me up and wanted to know if I wanted to go to work Moapa *and I says Yes, I will take it.* He says come

down and pick your work order up tomorrow morning and go to work." (Italics added.) The next day, applicant went to South Gate to pick up his work order, and the following day, August 2, 1981, reported to work for Ledbetter at Moapa, Nevada.

The work for Ledbetter finished about December 18, 1981, and applicant went back to South Gate to reregister on the out-of-work list. He then returned to Nevada to await developments.

Once again, applicant received a phone call from Local 92. Applicant testified the dispatcher "wanted to know if I wanted to go to work for Morrison-Knudson [in] Moapa. *I told him yes* and he said you better come down [to] pick up your work order. I said I'd be down there." (Italics added.) Morrison-Knudson/Fagle/Lord (Morrison-Knudson) was another contractor working on the power plant site in Moapa. Applicant again went to South Gate to pick up his work order, and reported to the job in Nevada.[1]

During his employment at Ledbetter and Morrison-Knudson, applicant allegedly suffered cumulative injuries from repetitive exposure to fly ash, welding fumes, heavy lifting and loud noises. He last worked on August 2, 1982.

The contracts of employment between applicant and the two employers were governed as to certain matters including wages, travel expenses and subsistence by the collective bargaining agreement between the Union and signatory contractors for the States of Washington, Oregon, California, Idaho, Utah, Nevada, Arizona, New Mexico and Alaska. Under rule 8 of that agreement, applicant was entitled to payment of mileage to the jobsite measured from the location of the union local and to one day's subsistence because the jobsite was 120 miles or more from the city hall in the city in which the union local was located, provided he did not quit for other than

---

[1] Applicant was actually called twice to work for Morrison-Knudson. The first time he went as a "high rigger," but the supervisor did not think applicant could do the work. He started work as a high rigger on February 11 and was terminated on February 18, 1982. Applicant was put back on the out-of-work list and was called a second time to work at Morrison-Knudson as a mechanic. He worked as a mechanic from March 29 to August 2, 1982. The parties do not distinguish between the telephone calls made to applicant for the two periods of employment at Morrison-Knudson. Neither shall we.

compelling personal reasons before being employed 15 days.[2] However, paragraph (a-2) of rule 8 provides in part: "It is the intention of the parties that employment commences and ends at the job site." Applicant was paid mileage and subsistence in accordance with rule 8.

*Discussion*

The ultimate question is whether the California Workers' Compensation Appeals Board has jurisdiction over these claims. The WCJ and the Board determined that the contracts of employment between the applicant and Ledbetter and Morrison-Knudson were each respectively made in the State of California and that therefore the Board has jurisdiction. (See Lab.

---

[2]Rule 8 reads in pertinent part as follows: "Subsistence and mileage payments provided below are intended to partially reimburse employees for expenses, therefore employees who are permanent residents in the city or town where the job site is located shall not be entitled to such subsistence and mileage payments.

"(a) Where a job is located outside of the forty mile zone from the city hall in the city of the Local Union having jurisdiction of the job, employees shall be compensated as follows:

" . . . . . . . . . . . . . . . . . .

"(a-1) Employees shall receive twelve cents (12¢) per mile for transportation between such city and the job at the beginning and conclusion of their employment. Such transportation allowance shall be paid from the City Hall to the job over the most direct main traveled route, plus necessary bridge toll and ferry charges.

"(a-2) It is the intention of the parties that employment commences and ends at the job site. In recognition of other travel costs incurred by the employee before commencement and after termination of his employment, Contractor agrees to supplement the transportation allowance provided in (a-1) above by reimbursing eligible employees at the rate of thirty eight cents (38¢) per mile until September 30, 1978 between such City Hall and the job site for such expenses incurred prior to and after termination of their employment. Such supplementary reimbursement shall not exceed eight (8) times the regular hourly area mechanic's rate.

"(a-3) In the event an employee quits for other than immediate compelling personal reasons not reasonably foreseen at time of employment before having been in the employ of the Contractor fifteen (15) calendar days, he shall not be entitled to transportation or travel expense to the job. In the event an employee quits for other than immediate compelling personal reasons not reasonably foreseen at time of employment or is discharged for just and sufficient cause before having been in the employ of the Contractor sixty (60) calendar days, he shall not be entitled to return transportation or travel expense. Any dispute arising as to the proper application of this provision shall be considered as a grievance subject to handling under the grievance machinery herein provided.

" . . . . . . . . . . . . . . . . . .

"(a-6) Where a job is located one hundred and twenty (120) miles or more from the City Hall in the city of the Local Union having jurisdiction of the job, an employee shall receive one additional day's subsistence at the start of his work on the job and at the conclusion of his work on the job, provided that payment of such additional day's subsistence under this paragraph (a-6) shall be subject to the same conditions applicable to transportation and travel expense under paragraph (a-3) above."

Code, §§ 3600.5[3], 5305[4]; *Alaska Packers Assn.* v. *Indus. Acc. Com.*, *supra*, 1 Cal.2d 250, 254-255 [34 P.2d 716], affd. (1935) 294 U.S. 532 [79 L.Ed. 1044, 55 S.Ct. 518].) Defendants concede that if the contract of employment was made in California the Board has jurisdiction, but they contend the contract of employment was made in Nevada, not California. Applicant concedes that if the contract of employment was not made in California, the board is without jurisdiction. (See *Alaska Packers Assn.* v. *Indus. Acc. Com.*, *supra*, 1 Cal.2d at pp. 255-257.) Thus, the controlling question is whether the contracts of employment were made in California or Nevada. By application of well-settled legal principles to the facts, which are not in dispute, and pursuant to controlling precedent we conclude the contracts of employment were made in the State of Nevada. The Board's decisions must therefore be annulled.

Applicant contends the contracts of employment were each made in California at the time he picked up his work order at the union local. Defendants contend the contracts of employment were each made in Nevada when applicant accepted the employer's offer of employment transmitted by the union local, which was acting as the employer's agent for the purpose of transmitting the offer and receiving applicant's acceptance. Basically, applicant relies on *Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd. [Egan]* (1966) 65 Cal.2d 429 [55 Cal.Rptr. 248, 421 P.2d 96], and a Board decision in which a petition for writ of review was denied on facts identical to those in *Egan, General American Trans. Corp.* v. *WCAB [Wood]* (1971) 36 Cal. Comp. Cases 476. Defendants rely on *Travelers Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 68 Cal.2d 7 [64 Cal.Rptr. 440, 434 P.2d 992] and well-recognized principles of contract law. Actually, both the *Travelers* and *Egan* decisions support the result advocated by defendants. In urging here the same result reached in *Egan* and *Wood* applicant has overlooked a vital fact which compels a different result here: his telephonic acceptance in the State of Nevada of the several employment offers.

[3]Labor Code section 3600.5, subdivision (a) reads: "If an employee *who has been hired* or is regularly employed *in the state* receives personal injury by accident arising out of and in the course of such employment outside of this state, he, or his dependents, in the case of his death, shall be entitled to compensation according to the law of this state." (Italics added.)

[4]Labor Code section 5305 reads: "The Division of Industrial Accidents, including the administrator director of the appeals board, has jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this state in those cases where the injured employee is a resident of this state at the time of the injury *and the contract of hire was made in this state.* Any such employee or his dependents shall be entitled to the compensation or death benefits provided by this division." (Italics added.)

The requirement that the injured employee be a resident of California at the time of injury was nullified in *Quong Ham Wah Co.* v. *Industrial Acc. Com.* (1920) 184 Cal. 26 [192 P. 1021, 12 A.L.R. 1190]. (See *Alaska Packers Assn.* v. *Indus. Acc. Com.* (1934) 1 Cal.2d at p. 255.)

In the *Egan* case there was a union job referral procedure and a collective bargaining agreement similar to those in the case at bench. Reynolds, a Nevada employer, informed the union local in Los Angeles that it was in need of a number of ironworkers for a job in Mercury, Nevada. Egan, a California resident, telephoned the union local inquiring about employment and was informed there was an opening with Reynolds in Nevada. He was dispatched to the jobsite with a referral slip. The Board determined and the court affirmed that the contract of hire between Egan and Reynolds was made in California, on the theory that Egan accepted the employer's offer, transmitted by the union local acting as the employer's agent, when he picked up his referral slip and departed for the jobsite. (65 Cal.2d at pp. 433-435.)

Thus, as applicant correctly points out, in *Egan* the contract of hire was determined to have been made in the state from which the worker was dispatched by the union, and on review the court noted a statement by the Board that in several sister-state decisions the state from which the worker had been dispatched by the union was held to be the place the contract of hire was made: *Warren* v. *Dixon and Christopher Company* (1960) 252 N.C. 534 [114 S.E.2d 250]; *Gomez* v. *Federal Stevedoring Co.* (1949) 5 N.J.Super. 100 [68 A.2d 482]; *Bowers* v. *American Bridge Co.* (1956) 43 N.J.Super. 48 [127 A.2d 580], affd. (1957) 24 N.J. 390 [132 A.2d 28]; *Foster Wheeler Corporation* v. *Bennett* (Okla. 1960) 354 P.2d 764. (See 65 Cal.2d at p. 433.)

■ However, immediately thereafter the *Egan* court proceeded to set forth its own analysis, stating in relevant part: "A contract of employment is governed *by the same rules applicable to other types of contracts,* including the requirements of *offer and acceptance.* . . . [¶] . . . In the instant case the commission [Board] was justified in concluding that the contract of hire between Egan and Reynolds was made in California, on the theory that *the union was the agent of Reynolds for the purpose of transmitting offers of employment to its members* and that *Egan accepted Reynolds' offer when he received his dispatch referral* slip and departed for the jobsite." (65 Cal.2d at pp. 433-434, italics added.)

■ Thus, the court in *Egan* simply applied the well-established principle of contract law that a contract is formed at the time and place the offeree accepts and communicates his or her acceptance to the offeror. (*Tuso* v. *Green* (1924) 194 Cal. 574, 580-581 [229 P. 327]; *Humphry* v. *Farmers U. & M. Co.* (1920) 47 Cal.App. 211, 214 [190 P. 489]; see also *Travelers Ins. Co.* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d at pp. 14-15; *Coml. Cas. Ins. Co.* v. *Ind. Acc. Com.* (1953) 116 Cal.App.2d 901, 908

[254 P.2d 954]; *Grimes* v. *Nicholson* (1945) 71 Cal.App.2d 538, 541 [162 P.2d 934]; Civ. Code, §§ 1581, 1583; Rest.2d Contracts, §§ 63, 64, com. *c.*) In *Egan,* the only manifestations of assent on the part of the offeree were his going to the union local to pick up the referral slip, his departure for the jobsite and his reporting for work. In the absence of evidence of an earlier acceptance, both the Board and the court concluded that acceptance occurred when Egan picked up the referral slip and departed for the jobsite.[5]

In each one of the sister-state decisions referred to by the Board in its *Egan* decision as holding the contract was made in the state from which the employee was dispatched by the union, the same fact was true: there was no evidence of the employee's having accepted the employment offer at any time before picking up his or her work referral at the union local and departing for the jobsite. (See *Warren* v. *Dixon and Christopher Company, supra,* 114 S.E.2d at pp. 251-253; *Gomez* v. *Federal Stevedoring Co., supra,* 68 A.2d at p. 483; *Bowers* v. *American Bridge Co., supra,* 127 A.2d at p. 584; *Foster Wheeler Corporation* v. *Bennett, supra,* 354 P.2d at pp. 766-768.) In each of these cases the court's decision turned on the question of where the offer of employment was accepted, and absent evidence of earlier acceptance it was held that acceptance occurred when the employee picked up his referral slip and departed for the job.

In *Travelers Ins. Co.* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 7, the applicant, a California resident, had registered with an employment agency in Denver, Colorado, which arranged for him to interview the employer's western division manager, apparently in Denver. Thereafter the employer's western division manager telephoned the employment agency and requested the agency to offer the applicant a position with the employer at Casper, Wyoming. The agency telephoned the applicant in California and transmitted the offer. On the telephone, the applicant accepted the offer.

The Board determined and the court affirmed that the employment contract had been made in California. Said the court in relevant part: "Cali-

---

[5]The *Egan* decision was followed in a companion case, *Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd. [Buckner]* (1966) 65 Cal.2d 438 [55 Cal.Rptr. 248, 421 P.2d 96], in which the court stated: "Under these circumstances and for the reasons set forth in *Egan, ante,* p. 429 . . . the commission was justified in concluding that the contract of hire was made in California . . . ." (*Id.,* at p. 441.) In *Buckner,* the applicant, a California resident, had received a telephone call in California from the employer in Nevada in which the employer "inquired if he wanted to go to work" and the applicant had "replied in the affirmative." (*Ibid.*) The employer then told the applicant to pick up his referral slip at the union hall in Los Angeles and he did. The court did not separately treat the telephone conversation and the applicant's picking up the referral slip. Because both would have resulted in a contract made in California, there was no compelling need to do so.

fornia has adopted the rule that *an oral contract consummated over the telephone is deemed made where the offeree utters the words of acceptance.* The board found that the parties entered into the employment contract in California when applicant accepted the offer transmitted by Walker Harris of Columbine [the employment agency] over the telephone. The validity of this finding must turn upon whether Columbine served as the agent of Core [the employer] for at least the limited purpose of transmitting an offer of employment to applicant. . . . [¶] . . . The board could reasonably infer from [the evidence] that Core authorized Columbine as its agent to transmit Core's offer of employment to applicant and to receive applicant's acceptance." (68 Cal.2d at pp. 14-15, fn. omitted, italics added.)

On the law with respect to the agency question the court in *Travelers* expressly found its *Egan* decision controlling, observing that in *Egan* the union, like the employment agency in *Travelers,* was held to be the agent of the employer for purposes of transmitting the offer of employment.

 So here. The uncontroverted evidence, indeed the testimony of applicant himself, establishes that on each occasion in issue a representative of the union local in South Gate telephoned applicant in Nevada and transmitted the offer of employment and applicant accepted: in respect to Ledbetter, "Yes, I will take it"; in respect to Morrison-Knudson, "I told him yes." Under the law of California, which is applicable pursuant to established choice of law principles (*Travelers Ins. Co.* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d at pp. 11-13), the contract was formed when applicant uttered his acceptance in Nevada (Civ. Code, § 1583; *Travelers Ins. Co.* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d at pp. 14-16; *Grimes* v. *Nicholson, supra,* 71 Cal.App.2d at p. 541; see Rest.2d Contracts, § 64, com. *c*), and it was made in the State of Nevada (*Travelers Ins. Co.* v. *Workmen's Comp. App. Bd., supra;* see Rest.2d Contracts, § 64, com. *c*).

Applicant ascribes undue significance to the fact that under rule 8 of the collective bargaining agreement he received mileage measured from the location of the union local and one day's subsistence because the jobsite was 120 miles or more from the city hall in the city in which the local has its office. The place from which travel expenses are paid and with respect to which the right to subsistence is determined has no necessary relationship to the question of where the contract was made. The payment of mileage and *wages* from the location of the union local were mentioned by the court in *Egan* as relevant but primarily in response to the employer's contention the contract of hire was not made until the employee was actually accepted by the employer at the jobsite. (See *Egan, supra,* 65 Cal.2d at pp. 436-

437.) In any event there is no inconsistency whatever between a telephonic acceptance in Nevada and payment of mileage and subsistence from the office of the union local in South Gate. Applicant was required as a condition subsequent to formation of the contract of employment to go to the office of the union local in South Gate to pick up his job order before reporting to the jobsite for work.

### Conclusion and Disposition

Having concluded in each case the contract of hire was made in Nevada, the Board lacks jurisdiction and its order in each case is annulled.

McDaniel, J., and Rickles, J., concurred.

The petition of respondent Salvaggio for a hearing by the Supreme Court was denied August 15, 1984.