STEVEN CONANT'S CASE.

No. 91-P-899.

Suffolk. October 21, 1992. - December 11, 1992.

Present: DREBEN, FINE, & LAURENCE, JJ.

*Workers' Compensation Act*, Jurisdiction. *Contract*, Employment.

This court concluded as matter of law that the Industrial Accident Re-
viewing Board erred in deciding that the Massachusetts Department of
Industrial Accidents lacked jurisdiction over a claim for benefits under
G. L. c. 152, the Workers' Compensation Act, for a work-related injury
the claimant sustained in Vermont, because the claimant's employment
contract was formed in Vermont after he had arrived at the job site
rather than at his labor union's hiring hall in Worcester at which he
had accepted a request for employment at the Vermont site, where
neither a collective bargaining contract provision entitling the employer
to reject a worker responding to a request communicated at a union
hiring hall, nor the employer's right to cancel a request should a worker
fail to arrive at the job site within forty-eight hours of the request, nor
the fact that the employer had communicated its need for workers only
to the union's New Hampshire local, prevented the contract from being
formed at the Worcester hiring hall. [697-700]

APPEAL from a decision of the Industrial Accident Re-
viewing Board.

The case was reported by *Gillerman*, J.

*Laurence S. Locke* for the claimant.

*Joseph F. Agnelli, Jr.* (*Lawrence Machione* with him) for
the insurer.

FINE, J. The question before us is whether the Massachu-
setts Department of Industrial Accidents has jurisdiction
over Steven Conant's claim for benefits under the Massachu-
setts Workers' Compensation Act, G. L. c. 152, for an injury
he sustained in Vermont. The issue turns on whether Conant,
a Massachusetts resident, entered into an employment con-
tract in Massachusetts. If so, Massachusetts would have dual
jurisdiction with Vermont over his workers' compensation

claim. See *Pederzoli's Case*, 269 Mass. 550, 553 (1930); *Lavoie's Case*, 334 Mass. 403, 407 (1956). Otherwise, notwithstanding Conant's residency here, Massachusetts would be without jurisdiction. An administrative judge ruled in favor of Conant, but, by a two to one vote, the reviewing board determined that jurisdiction in Massachusetts was lacking. The case is before us on a report from a single justice of this court. G. L. c. 152, § 12(2); Standing Order of the Appeals Court Governing Appeals from the Industrial Accident Reviewing Board (1990). We conclude that there was jurisdiction in Massachusetts.

The facts are undisputed. Conant is a member of the ironworkers union.[1] While he was present in the union hiring hall in Worcester on May 28, 1987, the business agent announced that Bechtel, Inc., needed three ironworkers for a construction project in Vermont. Bechtel had telephoned the Manchester, New Hampshire, local branch of the same union, which, because it was unable to supply the workers, relayed the request to the Worcester local. Conant told the business agent in Worcester that he would take the job and assumed he had been hired. According to the contract between Bechtel and the union, the union had forty-eight hours from the time of such a request to supply the workers; after forty-eight hours Bechtel had the option of cancelling the request. The contract also gave Bechtel the right to reject a worker sent by the union. Although workers had been rejected in the past, rejections were not usual. Conant experienced car trouble en route to Vermont, and he informed someone at Bechtel by telephone that he would be late. He was told the delay would not matter. About four days later, Conant arrived at the construction site. When he arrived, he was told that he had been expected. After filling out some routine administrative forms, but with no screening as to his qualifications and no discussion of the terms or conditions of

[1]He is a member of both Local 357 in Springfield of the Ironworkers Union and of the International Association of Bridge, Structural, and Ornamental Iron Workers.

his employment, he was put right to work. A few weeks later he was injured in the course of his employment.

The issue of where, in the context of union hiring halls, an employment contract is formed for purposes of jurisdiction over workers' compensation claims has not been decided previously in Massachusetts. In considering that issue in a case in which relevant events took place in more than one State, we are guided by the policies underlying our workers' compensation statute and by precedents from other jurisdictions.

The statute has been described as "a humanitarian measure designed to provide adequate financial protection to the victims of industrial accidents." *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 27 (1979). General Laws c. 152, § 26 (1986 ed.), clearly provides that an employee may be compensated for an injury received "within or without the commonwealth." Underlying that provision is the State's legitimate interest in avoiding the undesirable consequence to a resident worker injured in another State of being unable to travel to seek benefits and possibly becoming a public charge. See *Alaska Packers Assn.* v. *Industrial Acc. Commn.*, 294 U.S. 532, 542 (1935). Compare *Lavoie's Case*, 334 Mass. at 407. Consideration of the policies underlying the statute, therefore, suggests a broad scope for Massachusetts jurisdiction.

Although residence alone may be an insufficient basis for the exercise of jurisdiction, cases from other States support a broad interpretation of compensation statutes to protect workers injured outside their borders. Thus, for purposes of jurisdiction over compensation claims, it appears to be uniformly recognized that a union may act as an employer's agent for purposes of transmitting offers of employment to its members. See *Reynolds Elec. & Engr. Co.* v. *Workman's Compensation Appeals Bd.*, 65 Cal. 2d 429 (1966); *Travelers Ins. Co.* v. *Workman's Compensation Appeals Bd.*, 68 Cal. 2d 7 (1967); *Mattel* v. *Pittman Constr. Co.*, 248 La. 540 (1965); *Bowers* v. *American Bridge Co.*, 43 N.J. Super. 48 (1956). We accept that general proposition, at least with respect to unions operating hiring halls for the temporary

employment of craftsmen under collective bargaining agreements, on the assumption that such agreements generally create implied authority on the part of the unions to transmit offers of employment to their members. The question for our determination is whether the particular circumstances of Conant's situation require us to hold that the contract was formed not in Massachusetts but in Vermont after Conant arrived at the job site.

The majority of the reviewing board stated two bases for so finding: Bechtel's right to reject a worker; and Bechtel's right to cancel a request should a worker fail to arrive at the job site within forty-eight hours of the request.

The cases from other jurisdictions are divided on the question whether a contract provision entitling an employer to reject a worker responding to a request communicated at a union hiring hall prevents a contract from being formed at the hiring hall. Compare *Nelson* v. *AcAbee Constr., Inc.*, 591 So. 2d 1015, 1017-1018 (Fla. Dist. Ct. App. 1991); *Carpenter* v. *Lozier*, 184 S.W.2d 999, 1000-1001 (Mo. 1945) (contract not formed until worker reports to job site and is put to work), with *Reynolds Elec. & Engr. Co.* v. *Workmen's Compensation Appeals Bd.*, 65 Cal. 2d at 432; *Mattel* v. *Pittman*, 248 La. at 545-546; and *Houle* v. *Stearns-Rogers Mfg. Co.*, 157 N.W.2d 362, 368 (Minn. 1968) (if right to reject is not routinely exercised, contract is formed at the union hiring hall).[2] We follow the reasoning in the latter cases at least in the absence of evidence that a particular employer commonly exercises its right to reject workers. 4 Larson, Workmen's Compensation § 87.32 (1990). Where a requisition is specific as to number of workers needed in a particular craft, and the relationship between the employer and the union is such that at the job site workers need not be screened as to their qualifications, and wages and terms of employment need not be negotiated, it is reasonable to assume that a contractual rela-

[2]Although these cases are distinguishable from the instant case on their facts in that the employee in each instance was paid travel or salary for a period in advance of arrival at the job site and Conant was not, we do not consider those distinctions significant.

tionship is created between the employer and the worker when the worker accepts the offer and undertakes to travel to the job site. In such circumstances, the routine filling out of forms upon arrival at the job site is more properly regarded as an administrative detail than as an application for employment.

Nor do we think failure to comply with the forty-eight hour requirement necessarily meant that Conant's employment contract was formed in Vermont. Bechtel had the option of replacing Conant, but that option was not exercised, and he was put to work without making out an application for employment. The deviation from the forty-eight hour requirement was in this instance relatively minor. Moreover, it is undisputed that Conant had called someone at Bechtel about the delay and had been told that it would not matter. In these circumstances, the failure to arrive on time did not prevent a contract from having been formed at the hiring hall nor did it terminate that contract upon the expiration of the forty-eight hours. Timely arrival was not a strict condition to the formation of the contract, but was, instead, a condition subsequent which the employer could have relied upon to avoid the contract.

The insurer advances an additional argument on appeal as to why the contract was not formed in Massachusetts: Bechtel communicated its need for workers only to the New Hampshire local union. There is case law from other jurisdictions to support an assertion that, in such circumstances, no agency relationship, express or implied, could be created with the local branch of the union with which the employer did not communicate. See *Molinario* v. *Hartford Ins. Co.*, 462 So. 2d 253 (La. Ct. App. 1984); *Jarrell* v. *Employers Cas. Ins. Co.*, 499 So. 2d 947, 948 (La. Ct. App. 1986); *Silva* v. *James Ursini Co.*, 475 A.2d 205, 207-208 (R.I. 1984). Nevertheless, we reject that argument as overly technical in the circumstances. The instant case involves an employer which does business on a national scale, which carries workers' compensation insurance at least in Vermont and Massachusetts, and which entered into a collective bargaining agree-

ment with an international ironworkers union. Although, according to its routine practice, it notified only a particular nearby local union of its need for workers, its actions in hiring Conant and a fellow ironworker recruited by the Worcester hiring hall indicate that it was unconcerned as to which local its workers came from. At least where an injured worker seeking compensation in Massachusetts is a resident and the employer carries workers' compensation insurance here, compare *Hancock's Case*, 355 Mass. 523, 526 (1969), we would regard a local union to whom a request for union workers is relayed by another local branch of the same union as a sub-agent of the employer for purposes of transmitting an offer of employment.

We conclude as matter of law that the reviewing board erred in deciding that there is no jurisdiction under the Massachusetts Workers' Compensation Act and in setting aside the decision of the administrative judge. Accordingly, the report of the single justice is discharged and we vacate the decision of the reviewing board and remand the case to the Department of Industrial Accidents for further proceedings consistent with this opinion.[3]

*So ordered.*

---

[3]Conant concedes that, of course, there may be no double recovery.