[Civ. No. 16071.   First Dist., Div. One.   Oct. 15, 1954.]

TOM S. NAKATSUKASA, Appellant, v. L. A. WADE et al., Respondents.

Franklin C. Stark, Raymond J. Salisbury, John F. Wells and Stark & Champlin for Appellant.

W. A. Deans for Respondents.

BRAY, J.—Plaintiff appeals from a judgment denying him relief on his complaint and in favor of defendants upon their cross-complaint adjudging them to be the owner of a certain sum of money.

## QUESTION PRESENTED

The interpretation of the customary title company "Agent's Deposit Receipt," as to whether it requires approval by joint *owners* of the property to be sold where it is signed by one of them as "seller."

## RECORD

Plaintiff sued for $1,500 for moneys had and received. Defendants cross-complained seeking to quiet their title to the $1,500 hereafter mentioned. The court denied plaintiff relief and found defendants to be the owners of said money.

## EVIDENCE

With the exception that plaintiff testified that he asked defendant Heinley for his money back later the same day he deposited it, and Heinley testified it was within two or three days later, there is no conflict in the evidence. Defendant Wade and his wife Joy M. Wade were owners in joint tenancy of certain real property in Santa Cruz County. The property was listed with Heinley, a licensed real estate broker. September 28, 1951, after showing the property to plaintiff, Heinley, as agent, filled out in quadruplicate a printed form entitled "Agent's Deposit Receipt," acknowledging receipt from plaintiff of $1,500 on account of the purchase price of the described property "listed in the name of La Verna A. Wade," total purchase price $12,200; "The sale of this property is contingent upon the Buyer securing a $7,000 loan on the property . . . *Said property is sold subject to approval of owner.* The agent is granted the right for 10 days to obtain such approval." (Emphasis added.) Plaintiff was present in Heinley's office at the time. Neither plaintiff nor Heinley could remember if Wade was there. Mrs. Wade was not. (No testimony of either Wade was presented at the trial.) Plaintiff read over the receipt and signed the portion reading "I agree to purchase the above described property on the terms and conditions herein stated." Heinley also signed. Wade signed it but when does not appear except that plaintiff makes no contention that Wade signed after plaintiff attempted to withdraw. Immediately upon signing plaintiff gave Heinley a check for $1,500, the amount mentioned in the receipt as the deposit. Heinley deposited it the same day with

an escrow company. The same day plaintiff obtained a loan commitment of $7,000 from a loan association.

As stated above, plaintiff went to Heinley, told him he did not want the property, and demanded his money back. Soon thereafter, possibly the next day, plaintiff went to Wade and demanded return of the money. Plaintiff concedes that no misrepresentations were made him. He said he talked the purchase over with his family and "we decided we didn't want the place." The receipt was never signed by Mrs. Wade. There is no evidence that at any time prior to plaintiff's attempted withdrawal Mrs. Wade approved the sale, nor was plaintiff ever informed that she did. After defendants had refused to return the money, and on October 11th, plaintiff signed a note to Heinley, "Please try to sell the Wade property for me by October 28, 1951, otherwise I'll have to forfeit my deposit of $1500 . . . try to sell for $13,700 or get me an offer." The Wades eventually sold the property to another purchaser through a different broker. The $1,500 was never returned.

### CONTENTIONS OF THE PARTIES

Both parties agree that the real controversy is the construction of the receipt, that no evidence was offered as to the intention of the parties and that the meaning of the receipt must be determined from it alone. Defendants additionally contend that plaintiff ratified the agreement as signed by L. A. Wade solely. Plaintiff contends that the receipt shows that it required the approval of all persons owning the land before it could be binding. Defendant contends and the court found that it shows that it merely required the acceptance of Wade in order to be binding.

### EFFECT OF RECEIPT

A study of the document convinces us that to be binding it required the signatures of both owners of the land. The receipt is the usual title company's "Agent's Deposit Receipt" form. After acknowledging receipt of the deposit on account of the purchase price, it gives the terms of sale. It then provides a forfeiture clause in favor of the "seller," and a clause requiring "seller" to perfect title, if necessary. A policy of title insurance is to be paid for by the "seller." The sale must be approved by the "owner." The buyer agrees to purchase on the terms and conditions stated. At the end of the document appears the agreement to sell and convey and to pay the agent's commission, starting "I (or we) agree to

sell . . .'' and to be signed by ''_____
Seller and _____ (Wife, if married).''
There is also a blank line for ''Seller's Address.'' ■ It is
true that a person may legitimately agree to sell real property
in which he has no interest, provided only that when the time
arrives to convey title, he can do so. (See *Wheat* v. *Thomas*,
209 Cal. 306, 316 [287 P. 102]; *Anderson* v. *Willson*, 48 Cal.
App. 289, 294 [191 P. 1016].) But, having in mind that un-
der an agreement made by a seller who does not have title,
the buyer, in case of a breach by the seller, cannot compel
specific performance, although he can obtain damages, it
would seem reasonable to interpret the agreement of pur-
chase and sale, if possible, against such a result. Any other
construction would not require notice to the buyer that the
seller is selling property which he does not yet own, and would
deprive the buyer of the right of determining whether or not
he desires to enter into an agreement as to which the remedy
of specific performance will not be available to him.

The document as a whole uses the word ''seller'' five times.
But the approval must be by ''owner.'' Recognition must be
made of this significant fact, particularly as the law abhors
forfeitures, and here defendants want to keep plaintiff's de-
posit although a joint owner of the property has never ap-
proved of the sale, or agreed to sell her interest. ■ More-
over, the agreement was prepared by the agent for the seller,
and therefore its language ''should be interpreted most strong-
ly against the party who caused the uncertainty to exist.''
(Civ. Code, § 1654; see *Holloway* v. *Thiele*, 116 Cal.App.2d
68, 71 [253 P.2d 131].)

In *Koepke Sayles & Co.* v. *Lustig* (1929), 155 Wash. 70
[283 P. 458], the agent's receipt was similar to the one here.
It did not give the name of the seller. It contained a clause
''this agreement is entered into subject to the approval of the
owner thereof within 3 days.'' Within that time the owners
approved in writing. However, the fact of approval was not
communicated to the purchaser. After the expiration of
the three days the purchaser withdrew his offer to purchase.
The court held that notice to the purchaser that the owners
accepted his offer was necessary in order to bind him, as the
clause above mentioned meant that the offer should be ac-
cepted by the owner before it became obligatory on the pur-
chaser.

■ While ''seller'' and ''owner'' are used in the singular
rather than the plural (the document is printed that way) it

shows on its face that if the seller is married his wife is to agree as well. The form of the approval portion ''I (or we)'' indicates that ''seller'' is not necessarily singular. Thus the form, although using the singular, contemplates the plural where there is a wife. Even if the word ''owner'' is read as ''seller'' as defendant contends it should be, taking the four corners of the document as a whole it appears reasonably clear that the ''seller'' was to include the wife if there was one. A more reasonable construction, however, requires that a different meaning be given to the word ''owner,'' namely, the owner or owners of the title. ▆▆▆ Again taking the document as a whole it appears that the seller and owner are the same person or persons and therefore the agreement must be signed by Mrs. Wade as well as Wade, she being an equal owner. *Winter* v. *Kitto,* 100 Cal.App. 302 [279 P. 1024], holding that a contract which on its face purports to be *inter partes* is not invariably required to be executed by all whose names appear on the instrument before it will be binding on any, is not applicable here. The agreement in question there had no clause in anywise similar to the ''subject to approval of owner'' clause here. Moreover, there the court found from the evidence that the vendee considered the contract to be in full force and effect notwithstanding the failure of one of the vendors to sign.

▆▆▆ The fact that plaintiff obtained a loan commitment (the receipt states that the sale is subject to the buyer being able to obtain a loan) does not constitute a ratification by plaintiff of the contract signed by defendant L. A. Wade alone. This was done before plaintiff knew that the contract was signed by Wade or at least before plaintiff learned that it had not been approved by Mrs. Wade.

▆▆▆ Nor is the request of October 11th to defendant Heinley to sell the property or get an offer for it an affirmance or ratification of the contract as signed only by L. A. Wade. Before plaintiff wrote this request he had withdrawn his unaccepted offer to buy and had been informed by both defendants that he could not get his money back and that he was bound by the contract. Based on this misinformation his action was not an affirmance of the contract or waiver of any rights he might have.

The judgment is reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.