[No. AO19870. First Dist., Div. One. Sept. 20, 1983.]

JEANETTE BUNDSEN et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD,
RAMADA INN et al., Respondents.

**COUNSEL**

Frederick L. Boyd, Jr., and Beauzay, Hammer, Ezgar, Bledsoe & Sprenkle for Petitioners.

Karen E. Henzi, Thomas, Hall & Kirby, Richard E. Frye and Korte, Crain & Heisler for Respondents.

**OPINION**

**RACANELLI, P. J.**—This petition presents a question of the statutory territorial jurisdiction of the California Workers' Compensation Appeals

Board (WCAB).[1] In the proceedings below the WCAB concluded that it lacked jurisdiction over the subject matter. Following our summary denial of a petition for writ of review, the Supreme Court granted hearing and retransferred the case with directions that we issue the writ. Following review of the merits, we conclude that the WCAB has jurisdiction to proceed, and accordingly we annul its decision and remand for further proceedings.

I

The salient facts are uncontroverted. On January 14, 1979, Robert Bundsen, a 29-year-old professional musician and California resident, was killed in an automobile accident a few miles west of Steamboat Springs, Colorado. Death benefit proceedings were instituted by Robert's former wife, Jeanette, on behalf of herself and their minor child, Elizabeth Bundsen (hereinafter applicants).

In the latter part of 1978, Robert entered into an "arrangement" or agreement for a two-week engagement, beginning January 15, 1979, at the Ramada Inn located in Steamboat Springs. The agreement was reached in a series of telephone calls between Robert at his San Jose, California residence and Lee Riley, the duly authorized manager of the Ramada Inn.[2] Despite the parties' efforts, Riley could not be found to testify at the hearing concerning the telephone conversations.[3]

---

[1]The territorial jurisdiction is set forth in Labor Code sections 3600.5, subdivision (a) and 5305. These provisions read, respectively: "If an employee *who has been hired* or is regularly employed *in the state* receives personal injury by accident arising out of and in the course of such employment outside of this state, he, or his dependents, in the case of his death, shall be entitled to compensation according to the law of this state."

"The Division of Industrial Accidents, including the administrative director and the appeals board has jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this state in those cases where the injured employee is a resident of this state at the time of the injury *and the contract of hire was made in this state.* Any such employee or his dependents shall be entitled to the compensation or death benefits provided by this division." (Italics added.)

[2]Although Riley's direct employment by Mountain Resorts, Inc. may ultimately present questions of primary liability for any benefits found due and payable, the WCAB did not reach such questions below. Consequently, it is unnecessary for us to determine liability issues herein. However, for convenience, we shall refer generally to respondent parties as employers.

[3]Applicants' motion to take judicial notice of Riley's May 4, 1983 Colorado deposition in effect requests that we consider evidence not before the WCAB. Such request is improper (see Lab. Code, § 5952; cf. Witkin, Cal. Evidence (2d ed. 1966) §§ 150, 169, pp. 145-146; 155-157 (1982 supp.) pp. 28-29); accordingly, the motion is denied. Further, in view of our decision herein which does not affect the parties' rights to proffer the deposition testimony at the de novo hearing below, we reject applicants' alternative request for a stay.

On the basis of such limited evidentiary record, the WCAB adopted the opinion of the workers' compensation judge which decided the jurisdictional issue adversely to applicants.[4]

## II

The pivotal determination below rests upon the judge's finding and conclusion that the evidence was insufficient to prove that a contract of hire had been made in California. Although there is some inconsistency in the language of the challenged opinion, it seems clear that applicants had in fact established a contract of hire. Read as a whole, the opinion—including the report to the WCAB on applicants' petition for reconsideration—indicates that the judge was satisfied of the *existence* of such a contract. The record amply supports this conclusion. Bundsen's personal log and calendar and his statements to family and friends prior to his departure from California support a finding that he left California with the intention to fulfill an existing contractual obligation to play at the Ramada Inn starting January 15. That finding is fortified by proof that on the day after the fatal accident Jeanette Bundsen received a sympathy card and flowers from the "management and staff" of the Steamboat Springs Ramada Inn.

Applicants' main contention and opposing arguments focus on the central issue whether the contract was "made in" California. Thus, we must look to California law in deciding this threshold issue. (See *Travelers Ins. Co.*

---

[4]In pertinent part, the judge's opinion reads as follows: "Decedent entered into an arrangement to play at the Ramada Inn and the Tugboat Inn in January of 1979. When he was killed in a motor vehicle accident on January 14, 1979 he was about three miles West of Steamboat Springs, Colorado, evidently en route to Steamboat Springs. . . .

"In order for California to have jurisdiction of this case, a contract of employment must have been entered into in California since the injury occurred in Colorado (Labor Code Section 5600(a), 3600.5 and 5305). . . .

"It is relatively clear that the decedent entered into an arrangement with Mr. Lee Riley of Mountain Resorts, Inc., to play at the Ramada Inn operated by Mountain Resorts, Inc., in Steamboat Springs, Colorado. This was apparently done by a telephone call or more probably a series of telephone calls. A careful review of the decedent's Calendar, Log book and telephone bills submitted in evidence (Applicant's Exhibit No. 5) fails to give any indication as to who initiated the contact between decedent and Lee Riley and who made the offer and where it was accepted. . . .

"There is no direct evidence of any contract. There is no evidence at all as to where any such contract was made. There is no evidence as to any negotiation and no basis on which to conclude where any presumptive contract was made; i.e. where any offer was accepted. It is not known how any negotiations were initiated much less how, where, or by whom any such agreement was finally consumated [*sic*]. If an offer was accepted in California, California would of course have jurisdiction. If such an offer was accepted in Colorado, the contract would have been made in Colorado and California would not have jurisdiction. There is simply no evidence to construe liberally or otherwise on this crucial question.

"Accordingly, it must be found that the evidence is insufficient to establish that a contract of employment was entered into in California. Thus, California jurisdiction cannot be established. Hence this case must be dismissed."

v. *Workmen's Comp. App. Bd. (Coakley)* (1967) 68 Cal.2d 7, 11-14 [64 Cal.Rptr. 440, 434 P.2d 992]; see also Rest.2d Conf. of Laws (1971) §§ 181, 188, 196.)

In *Coakley* the evidence established that the employee, who sustained an injury in Utah, had accepted the employer's offer of employment by telephone while in California. In a decision affirming the WCAB's exercise of jurisdiction and award, the Supreme Court summarily stated: "California has adopted the rule that an oral contract consummated over the telephone is deemed made where the offeree utters the words of acceptance."[5] (68 Cal.2d at p. 14; see also *Reynolds Elec. etc. Co. v. Workmen's Comp. App. Bd. (Egan)* (1966) 65 Cal.2d 429, 433 [55 Cal.Rptr. 248, 421 P.2d 96].) But such established principle dealing with the formation of a contract does not mandate that in every case proof of the actual offeror and offeree is essential to the establishment of an enforceable contract. These concepts, while useful analytical tools in related contexts, are not *elements* of a contract. (See, e.g., Civ. Code, §§ 1549, 1550, 1621; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, §§ 1, 96, pp. 29, 99; 1 Corbin on Contracts (1963) §§ 12, 55, pp. 27, 233; 1 Williston on Contracts (3d ed. 1957) §§ 1, 3, 18, 23, pp. 1, 8-9, 31, 51.) The Restatement Second of Contracts (1981) sections 1, 3 and 17 defines a contract in terms of *promises* which are evidenced by *mutual assent*. Particularly relevant is section 22, which provides: "(1) The manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties.

"(2) A manifestation of mutual assent may be made even though neither offer nor acceptance can be identified and even though the moment of formation cannot be determined."

The novel factor presented herein due to the unavailability of either party to the oral contract of hire is that "neither offer nor acceptance can be identified [and] the moment of formation cannot be determined." (Rest.2d Contracts, *supra*, § 22.) To apply the *Coakley* rule in all cases without exception would not only contradict basic principles of contract law but also would tend to frustrate the general legislative policy that worker compensation provisions of the Labor Code "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (Lab. Code, § 3202.)

Indeed, the *Coakley* court itself underscored that fundamental policy in holding in *favor* of the injured California resident on an evidentiary record

[5]The court cited in a footnote its earlier decision in *Bank of Yolo v. Sperry Flour Co.* (1903) 141 Cal. 314 [74 P. 855], resolving a venue question which turned upon the place of acceptance of a telephonic offer.

which disclosed the identity of the offeree. (*Travelers Ins. Co. v. Workmen's Comp. App. Bd. (Coakley), supra,* 68 Cal.2d at p. 13.)

■ Accordingly, we conclude that neither *Coakley* nor other California authority compels a conclusion that direct proof of an offer and acceptance are necessary elements of a valid contract for hire, at least insofar as industrial employment status is implicated.

■ In deference to the rule of liberal construction which applies both in cases of statutory ambiguity (*Granado v. Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 404 [71 Cal.Rptr. 678, 445 P.2d 294]) and in matters of factual interpretation (*Hulbert v. Workmen's Comp. Appeals Bd.* (1975) 47 Cal.App.3d 634, 639 [121 Cal.Rptr. 239]) and in light of the special circumstances shown, we hold that in a workers' compensation case involving injury suffered by a California resident while working outside the state, under a contract of hire made by telephone in which the offeree cannot be identified, such contract for hire is deemed to have been made in California if *one* of the parties to its formation was at that time located in California.[6]

### III

■ Moreover, even if we were to conclude that *Coakley* requires proof of the offeree's identity in all cases, nonetheless—obedient to the statutory mandate of section 3202—we must construe the evidence in the record as reasonably supporting an inference that the employee located in California was the offeree. We cannot agree with the judge and the WCAB that "[t]here is simply no evidence to construe liberally or otherwise" bearing on that critical issue. The evidence is indisputable that the offeree was located either in California or Colorado. The problem was not a lack of evidence, but that the relevant evidence on that issue stood in equipoise. Arguably, in such circumstances, section 3202 requires that the finding be made in the employee's favor.[7]

However, we need not decide that ancillary question. Standing alone, proof that a contract of hire arose raises a plain inference that it was the employer, the party of greater bargaining power, who dictated the terms of

---

[6]Were we to accept respondents' contrary argument, the strong likelihood exists that— given the absence of direct proof of the identity of the offeree—the benefits claim could not be successfully asserted in either forum; such an unjust result would be repugnant to California policy.

[7]Problems such as this have provoked academic criticism of all the extraterritorial jurisdiction statutes which turn on place of contract formation. (Cf. 4 Larson, The Law of Workmen's Compensation (1983) § 87.34, pp. 16-78 to 16-84; Note, Loadman, *Workmen's Compensation and the Place of Contract* (1970) 21 Hastings L.J. 731, 738.) Pending clarifying legislation, the courts must do their best to apply the place-of-formation statutes in a manner that best effectuates the policies of the workers' compensation act.

the offer. (Cf. Evid. Code, § 600, subd. (b).) The basis for such an inference is even more compelling where, as here, the employer fails to produce its own party to the telephone conversation, relying instead on the employee's unavailability to testify. On this state of the evidence section 3202 requires that the factfinder draw the inference that the employer extended the offer of employment which was accepted in California.

For the reasons stated, we conclude that the evidence herein established a contract of hire made in California. Accordingly, the WCAB possessed jurisdiction to hear and decide the case on the merits.

The order dismissing the case is annulled and the cause is remanded with directions to undertake further proceedings on the merits consistent with the views expressed herein.

Newsom, J., and Holmdahl, J., concurred.