[No. B124899. Second Dist., Div. Two. June 24, 1999.]

MITCHEL BOWEN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and FLORIDA
MARLINS, Respondents.

**COUNSEL**

Finestone, Schumaker, Cocquyt, Graham and Kirby Thomas for Petitioner.

Richard A. Berthelsen; Jeffrey R. Walsh; and John F. Henning III for National Football League Players Association as Amicus Curiae on behalf of Petitioner.

Schwartz, Steinsapir, Dohrmann & Sommers, Robert M. Dohrmann; and Michael S. Weiner for Major League Baseball Players Association as Amicus Curiae on behalf of Petitioner.

Eugene C. Treaster for California Applicants' Attorneys Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Kegel, Tobin & Truce and Robert R. Wills for Respondent Florida Marlins.

Wall, McCormick & Baroldi, Anthony C. Baroldi; Kasowitz, Benson, Torres & Friedman, Harold G. Levison; Adorno & Zeder and Sylvia Krainin for National Football League Management Council as Amicus Curiae on behalf of Respondents.

Morgan, Lewis & Bockius, John S. Battenfeld, Victoria E. Houck; and Francis X. Coonelly for Major League Baseball Player Relations Committee, Inc., as Amici Curius on behalf of Respondents.

---

**OPINION**

**MALLANO, J.**[*]—Petitioner and applicant Mitchel Bowen, a California resident, suffered an injury in Florida while playing professional baseball for a minor league team owned by the Florida Marlins. He applied for benefits under the California Workers' Compensation Act. The workers' compensation judge found that the Workers' Compensation Appeals Board (WCAB) had jurisdiction over the injury because Bowen's contract of hire was made in California. Upon reconsideration, the WCAB, in a two-to-one decision, ruled that it was without jurisdiction to proceed with Bowen's claim because the contract of hire was not made in California. We conclude that the WCAB erred in deciding that it did not have jurisdiction over Bowen's injury.

THE FACTS

The facts are not in dispute and are as follows. Bowen, born and raised in the Los Angeles area, played baseball at St. Francis High School in La Canada, California, and at College of the Canyons in Valencia, California. While playing at the college, he came to the attention of Grady Mack, a Marlins' scout who also resided in California. In 1992, the Marlins drafted

---
[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Bowen and Mack advised Bowen of this fact by telephone. Mack and Bowen entered into negotiations and eventually reached an oral agreement as to bonus, salary, the farm team Bowen would play for, and the term of employment. Thereafter, Mack mailed to Bowen's residence a minor league uniform player contract for the 1993 season. The contract called for a cash bonus of $2,500 payable upon approval of the contract by the office of the Commissioner of Baseball (Commissioner), a $2,500 per semester (with a maximum of four semesters) college scholarship plan,[1] and a monthly salary during the baseball season of $850. He was to be assigned to the Erie Sailors of the New York Penn League as a right-handed pitcher. Bowen discussed the matter with his parents and signed the contract on August 29, 1992, in California. He was 19 years old at the time. He mailed the contract to the Marlins, which, in turn, signed and forwarded it to the office of the Commissioner, where it was approved and recorded. Paragraph XXVI of the contract states: "This Minor League Uniform Player Contract, including any addenda or attachments, shall not be valid, recognized or enforced unless filed with and approved by the Commissioner."

Contracts were executed in a similar fashion for the 1994, 1995 and 1996 seasons. They were sent to Bowen by mail at his residence in California, where he signed and returned them to the Marlins in Florida. The contracts were subsequently approved by the Commissioner.[2]

In the 1996 season, Bowen played for a farm club of the Marlins, the Brevard County Manatees, an A Advanced league, earning a salary of $1,275 per month. In April 1996 he injured his right elbow while pitching in a game in Clearwater, Florida. He was given a medical evaluation and placed on the disabled list for approximately 42 days. Thereafter, Bowen pitched for the remainder of the season with pain, discomfort, weakness and popping in his pitching arm. He was released by the Marlins in October 1996.[3] He received no workers' compensation benefits from the State of Florida.

---

[1]The record does not reflect whether Bowen availed himself of the college scholarship plan.

[2]It is not clear where the contracts were approved by the Commissioner. Daniel C. Lunetta, director of minor league administration for the Marlins, testified that he was responsible for players' contracts. With respect to at least one of Bowen's contracts, Lunetta testified that he sent it to the appropriate league official for approval, namely, the National Association of Professional Baseball Leagues in St. Petersburg, Florida. Lunetta testified that Bowen's contract for the 1993 season bore the signature of Mike Moore, "who signed for the [C]ommissioner of [B]aseball." The contracts themselves do not reveal where they were signed by the Commissioner or his designee. The opinion of the WCAB states, without any support in the record, that the Commissioner signed Bowen's contract for the 1996 season in New York.

[3]In his professional baseball career, Bowen had his "cup of coffee" in the major leagues for one day during spring training.

During his baseball career with the Marlins, he played only in New York and Florida. He always returned after the six-month baseball season to California, where he continued to reside. He maintained a California driver's license and a car registered in California.

## ISSUE

■■■ We have before us an employee[4] who is a professional athlete residing in California, who signed a player's contract in California furnished by an out-of-state team. Should he be denied benefits under California workers' compensation law for injuries received while performing out of state because the contract was subsequently, outside of California, signed by the team and, as required by the contract, approved by the commissioner of the sport involved?

## DISCUSSION

We conclude that the WCAB erred in determining that it lacked jurisdiction in this case. In reaching its decision, the WCAB failed to follow its own previous decisions and appellate workers' compensation law cases. It relied, instead, on common law[5] contract cases and failed to heed the mandate of section 3202 that sections 3600.5 and 5305 ". . . be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

California workers' compensation law affords compensation to employees hired in California and injured out of state. Section 3600.5, subdivision (a) provides that "If an employee who has been hired or is regularly employed in the state receives personal injury by accident arising out of and in the course of such employment outside of this state, he, or his dependents, in the case of his death, shall be entitled to compensation according to the law of this state." Section 5305 provides that "The Division of Workers' Compensation, including the administrative director and the appeals board has jurisdiction over all controversies arising out of injuries suffered outside the territorial limits of this state in those cases where the injured employee is a

---

[4]Under Labor Code section 3351, " '[e]mployee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, . . ." while Labor Code section 3357 provides that "Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee."

All further statutory references are to the Labor Code unless otherwise indicated.

[5]In referring to "common law" contract cases, we adopt the parlance of workers' compensation law to distinguish between contract cases that are not in a workers' compensation law setting and those that are.

resident of this state[6] at the time of the injury and the contract of hire was made in this state. Any employee described by this section, or his or her dependents, shall be entitled to the compensation or death benefits provided by this division."

In its opinion, the WCAB states that "California courts have held that when the terms of the contract, or other evidence, show that the signature of a third party, in addition to that of the offeree, is required to complete an agreement, the agreement is not binding on those who have signed until all have signed." Three cases are cited in support of this proposition: *Anthony Macaroni Co.* v. *Nunziato* (1935) 5 Cal.App.2d 588 [43 P.2d 315] (lessee not liable on a lease executed by only one of the two named lessors), *Helperin* v. *Guzzardi* (1951) 108 Cal.App.2d 125 [238 P.2d 141] (no contract formed where husband signed contract of sale of apartment house and handed it to a broker to be retained until wife, a cotenant, consented to sale and signed contract, and wife declined) and *Nakatsukasa* v. *Wade* (1954) 128 Cal.App.2d 86 [274 P.2d 918] (under terms of real estate agent's deposit receipt, both joint owners of real property had to sign documents for the deposit receipt to be binding). The WCAB then states: "In other words, in determining the place of contract formation, we look to where the last act is done which is necessary to give the contact binding effect." The WCAB concludes that based on the contract language that the contract would not be "valid, recognized or enforced" unless filed with and approved by the Commissioner, the contract was not formed in California when it was signed by the Commissioner in New York.[7] In support of this proposition, the WCAB cites the same three cases again and adds another, *Los Angeles Rams Football Club* v. *Cannon* (S.D.Cal. 1960) 185 F.Supp. 717 (*Cannon*), which the WCAB states "to be especially on point and dispositive of the issue in the present matter." We do not agree that *Cannon* is controlling.[8] It is a common law contract case which does not involve the policies of California workers' compensation law. It has superficial appeal in that it deals with a professional football player's contract containing a clause providing that the contract "shall become valid and binding upon each party hereto only when, as and if it shall be approved by the Commissioner [of the National Football League]." There, a player signed three sets of contract forms covering the

---

[6]Although it has no bearing on this case, we note that the requirement that the employee must be a resident of California has been declared unconstitutional. (*Benguet Con. M. Co.* v. *Indus. A. Com.* (1939) 36 Cal.App.2d 158, 163-164 [97 P.2d 267].)

[7]See footnote 2, *ante.*

[8]*Cannon* is a decision of a trial court and, as such, is not precedent under the doctrine of stare decisis. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

years 1960, 1961 and 1962 to play for the Los Angeles Rams.[9] However, the National Football League (NFL) Commissioner approved only the 1960 contract. Two weeks later, the player was contacted by the Houston Oilers, which ultimately led to his informing the Rams that he no longer wished to play for the Rams and that he revoked any offer he had made to do so. The Rams brought suit seeking to establish the validity of its contracts and obtain an injunction prohibiting the player from playing for any team besides the Rams. The trial court ruled against the Rams on both counts, declaring that approval by the NFL Commissioner was essential to the formation of the contracts. The court construed the contracts as an offer by the player to play for three years, which offer was not accepted as the Rams requested and received the NFL Commissioner's approval for only one year, 1960. In reaching its conclusion, the court states: "If we are to adhere to the doctrine of freedom of contract we must allow parties to specify any degree of formality to the act of execution they wish *so long as it doesn't violate public policy* or some rule of law." (185 F. Supp. at p. 724, italics added.) Accordingly, the court ruled that a valid written contract or contracts never came into existence. Unlike the situation in *Cannon*, the matter before us is not merely a suit on a contract. Rather, it is a workers' compensation case which evokes the *public policy of the State of California* reflected in section 3202 directing the courts to construe liberally sections 3600.5 and 5305.

It is noteworthy that neither the WCAB nor the Marlins contend that since the Marlins had not yet signed the contract there was no contract formed in California when Bowen signed it. Thus, both the WCAB and the Marlins appear to concede that Bowen's signature would be sufficient to form a contract, but for the requirement of the Commissioner's approval. This departure from the basic common law of contracts that an offer and its acceptance creates a contract is explained by the difference between workers' compensation law and the common law of contracts, as epitomized by the case of *GATX-Fuller, Ltd.* v. *Worker's Comp. Appeals Bd.* (1979) 44 Cal.Comp.Cases 199 (writ den.) *(GATX-Fuller).*[10] There, Wines, an engineering consultant, was injured in Indonesia while working for GATX-Fuller, a Canadian company, pursuant to a contract drafted in Pennsylvania and sent to Wines at his residence in California, where he signed

---

[9]The court determined that Billy Cannon, a star football player at Louisiana State University and the Los Angeles Rams' number one draft selection, was signed by the Rams to professional contracts and given two checks, one for $10,000 and another for $500, on November 30, 1959, thirty-two days before Cannon played in the Sugar Bowl game on January 1, 1960, ostensibly as an amateur.

[10]California Compensation Cases reported as "denials of writs of review" such as *GATX-Fuller* have no stare decisis effect on an appellate court. However, they are citable authority as to the holding of the WCAB. (*Ralphs Grocery Co.* v. *Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 827, fn. 7 [45 Cal.Rptr.2d 197].)

the contract and mailed it to GATX-Fuller in Canada. The WCAB concluded that Wines had accepted the contract when he signed and mailed it in California, even though the contract required a final signature of GATX-Fuller in Canada for final acceptance. The WCAB concluded that ". . . if that condition prevailed GATX-Fuller would be both the offeror, in seeking out the employee and submitting a proposed agreement, and an offeree, in accepting the contract after reserving the right or privilege of making the final act of execution." (44 Cal.Comp. Cases at p. 200.) The WCAB held that "GATX-Fuller could not be both offeror and offeree and in fact was the contract's offeror [and that] Wines . . . was the offeree and accepted the contract's offer in California." (*Ibid.*) GATX-Fuller sought a writ contending that the WCAB lacked jurisdiction in the case because the final act necessary to formalize the contract of hire occurred in Canada. The writ was denied by the Court of Appeal. ■ Applying the reasoning of *GATX-Fuller* here, we conclude that the Marlins was the offeror when it sent contracts to Bowen in California, and Bowen was the offeree when he signed and returned them from California.[11] However, the WCAB distinguished its ruling in *GATX-Fuller* on the grounds that there was no provision for approval by a third party in that case.

With respect to the situation we have here, namely, a contract of hire containing subsequent conditions to be satisfied, a highly regarded authority on California workers' compensation law has stated: ". . . [T]he fact that there are formalities which must be subsequently attended to with respect to such extraterritorial employment does not abrogate the contract of hire or California jurisdiction. Such things as filling out formal papers regarding the specific terms of the employment or obtaining a security clearance from the federal government are deemed '*conditions subsequent*' to the contract, not preventing it from initially coming into existence. [Citations.]" (St. Clair, Cal. Workers' Compensation Law & Practice (5th ed. 1996) § 2.10, pp. 111-112, italics added.)

*Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 429 [55 Cal.Rptr. 248, 421 P.2d 96] (*Reynolds*), a case dealing with post-formation contract requirements, is most instructive. In *Reynolds,* a California resident, Egan, was injured in an accident in Nevada while working for Reynolds. He had been dispatched from a California hiring hall of his union which had a contract with Reynolds to provide iron workers to a Nevada jobsite. Upon arriving at the jobsite, Egan filled out several forms, one of which

---

[11]That the Marlins was the party of superior bargaining power and the party which would have dictated the terms of the employment further supports our conclusion here. (See *Janzen* v. *Workers' Comp. Appeals Bd.* (1997) 61 Cal.App.4th 109, 114 [71 Cal.Rptr.2d 260] and *Bundsen* v. *Workers' Comp. Appeals Bd.* (1983) 147 Cal.App.3d 106, 111 [195 Cal.Rptr. 10].)

related to a security clearance from the Atomic Energy Commission which Egan was required to obtain. The WCAB concluded that the contract of hire was made in California under sections 3600.5 and 5305, ". . . reasoning that the contingencies which would have precluded a worker from assuming his duties or from retaining employment were *conditions subsequent* to employment rather than conditions precedent. That Egan was required to obtain security approval did not affect this conclusion since the clearance was to be certified by an agency of the United States Government rather than by Reynolds and, in addition, the evidence indicated Egan commenced work before clearance was obtained." (65 Cal.2d at p. 433, italics added.) The Supreme Court, in upholding the WCAB's determination that the contract was executed in California despite the requirement that Egan obtain a security clearance, stated: "The evidence is . . . sufficient to support the [WCAB's] determination that the requirement for Egan to obtain Atomic Energy Commission security clearance did not prevent the formation of an employment contract prior to his arrival in Nevada. [Citation.]. . . [T]here was ample justification for the [WCAB's] determination that obtaining [a security] clearance was a *condition subsequent* to employment." (*Id.* at pp. 434-435, italics added.)

 ■ ■ Similarly, in *Thompson* v. *Golden Eagle Ins. Co.* (1990) 87 RDG 32124, 18 Cal. Workers' Comp. Rptr. 43,[12] the WCAB upheld the workers' compensation judge's finding that a contract of hire by a California employer was made here, thus justifying the WCAB's exercise of jurisdiction over the injury that an Oregon truck driver suffered in Illinois. This was so even though the contract of hire was contingent upon good job references and passing certain tests. The WCAB stated: "As to the contingencies that could have precluded applicant from working, such as bad job references or failure to pass any of the tests, these were merely *conditions subsequent* that did not prevent formation of a contract . . . ." (*Id.* at p. 44, citing *Reynolds, supra,* 65 Cal.2d 429, italics added.)

In *Ledbetter Erection Corp.* v. *Workers' Comp. Appeals Bd.* (1984) 156 Cal.App.3d 1097 [203 Cal.Rptr. 396], an employee, Salvaggio, a resident of Nevada, accepted an employment offer in Nevada, in a telephone call originating from a union hall in California, to work in Nevada. The court upheld the WCAB's determination that the contract of employment was made in Nevada, even though the employee had obtained his job by

[12]"[A Workers' Compensation Appeals] Board panel decision reported in the California Workers' Compensation Reporter [such as *Thompson*] is a properly citable authority, especially as an indication of contemporaneous interpretation and application of workers' compensation laws." (*Griffith* v. *Workers' Comp. Appeals Bd.* (1989) 209 Cal.App.3d 1260, 1264, fn. 2 [257 Cal.Rptr. 813].)

registering at the union hall in California, was contacted by telephone by the union hall and had to return to the union hall to obtain a work order before reporting. At the jobsite, the employer had the right to require satisfactory evidence of a worker's qualifications and to reject a worker for good cause. The employee received mileage measured from the union hall and one day's subsistence because the jobsite was 120 miles or more from the city hall in the city where the union hall was located. The court found that the contract was formed when the employee accepted the offer of employment by telephone, stating that ". . . [T]here is no inconsistency whatever between a telephonic acceptance in Nevada and payment of mileage and subsistence from the office of the union local in South Gate[, California]. [The employee] was required as a *condition subsequent* to formation of the contract of employment to go to the office of the union local in South Gate to pick up his job order before reporting to the jobsite for work." (*Id.* at p. 1106, italics added.)

*Travelers Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 68 Cal.2d 7 [64 Cal.Rptr. 440, 434 P.2d 992] (*Travelers*), disapproved on another point in *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432], is also demonstrative of California's interests in protecting its workers injured out of state. In *Travelers,* Coakley, a California resident, was hired by telephone in California to work in Utah, where he was injured. Although the oral contract of hire included the terms of the parties, time and place of employment, salary, and the general category of employment (geologist), Coakley's specific duties were not designated until he arrived at the jobsite. In upholding the WCAB's finding that the contract had been formed in California under sections 3600.5 and 5305, the court stated: "That particular terms remain undesignated does not render the original contract invalid for uncertainty." (68 Cal.2d at p. 17.) Similarly, in *Janzen* v. *Workers' Comp. Appeals Bd.*, *supra*, 61 Cal.App.4th 109, a California resident, Janzen, by telephone, contacted Curtis in Wyoming concerning a crop dusting job. They agreed that Curtis would employ Janzen if he performed satisfactorily on a test run. Janzen went to Wyoming and completed a test run and was hired. He died in a crash during a spraying run on his third or fourth day on the job. In holding that the WCAB had jurisdiction to award death benefits to Janzen's daughter, the court rejected the workers' compensation judge's determination that the evidence did not establish who was the offeror and who was the offeree in the telephone conversation. The court stated: "In the absence of contrary evidence, proof that an employment contract arose raises an inference it was the employer, the party with the superior bargaining power and the party who normally dictates the terms of the employment, who was the offeror. [Citation.] This is consistent with the statutory mandate that state workers' compensation laws are to be 'liberally construed by the courts with the purpose of

extending their benefits for the protection of persons injured in the course of their employment.' (Lab. Code, § 3202.)" (*Id.* at p. 114.)

The views of our Supreme Court regarding the mandate that the courts construe the Workers' Compensation Act liberally have not changed since the time of *Reynolds.* In *Arriaga* v. *County of Alameda* (1995) 9 Cal.4th 1055, 1065 [40 Cal.Rptr.2d 116, 892 P.2d 150], the Supreme Court stated that its conclusion in the case ". . . comports with the Legislature's command in section 3202 that the Act 'be liberally construed by the courts with the purpose of extending [its] benefits for the protection of persons injured in the course of their employment.' [Fn. omitted.] This command governs all aspects of workers' compensation; it applies to factual as well as statutory construction. [Citations.] Thus, '[i]f a provision in [the Act] may be reasonably construed to provide coverage or payments, that construction should usually be adopted even if another reasonable construct is possible.' "

Our departure from the technical common law of contracts in favor of extending workers' compensation benefits is nothing novel. In *Laeng* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771 [100 Cal.Rptr. 377, 494 P.2d 1], our Supreme Court, in a case of first impression, addressed the question of whether an injury sustained during a "tryout" for an employment position is compensable under workers' compensation law. In determining that the injured person, Laeng, was an "employee" and entitled to compensation, the court stated: "Although we recognize that at the time of his injury the claimant was not yet 'employed' by the city in any contractual sense, we are not confined, in determining whether Laeng may be considered an 'employee' for purposes of work[ers'] compensation law, to finding whether or not the city and Laeng had entered into a traditional contract of hire. . . . [¶] Given [the] broad statutory contours [of the definition of 'employee'[13]], we believe that an 'employment' relationship sufficient to bring the act into play cannot be determined simply from technical contractual or *common law* conceptions of employment but must instead be resolved by reference to the history and fundamental purposes underlying the Work[ers'] Compensation Act [citations]." (*Id.* at pp. 776-777, italics added.) In a footnote to this text, the court explained: "By this statement, of course, we do not imply that common law notions of the employment relationship should never be considered in determining the issue of 'employment' under work[ers'] compensation, but only that such common law principles are not determinative of the issue. . . . [T]he differences between the common law and work[ers'] compensation usage of the term 'employment' stem from the fundamentally different purposes served by the employment concept in each context. . . . Although there is considerable overlap between the two fields, in each

---

[13]See footnote 4, *ante.*

context the determination of the presence or absence of a sufficient 'employment' relationship must ultimately depend on the purpose for which the inquiry is made." (*Id.* at pp. 777-778, fn. 7.)

Based on the foregoing authorities, we conclude that a contract was formed in California under sections 3600.5 and 5305 when Bowen signed it, accepting the Marlins' offer, and that the approval of the Commissioner was a condition subsequent to employment. Even if, for the sake of discussion, Bowen's acceptance of the Marlins' offer did not form a contract under common law in California by reason of the contract clause requiring the Commissioner's approval, we would still conclude that Bowen is entitled to benefits under California workers' compensation law. Section 5000 provides that "No contract . . . shall exempt the employer from liability for the compensation fixed by this division . . . ." In a landmark case applying section 27(a) of the Workmen's Compensation, Insurance and Safety Act of 1917 (section 27(a); Stats. 1917, ch. 586, § 27(a), p. 855), the predecessor statute of section 5000 containing similar language,[14] *Alaska Packers Assn.* v. *Indus. Acc. Com., supra,* 1 Cal.2d 250, affirmed (1935) 294 U.S. 532 [55 S.Ct. 518, 79 L.Ed. 1044], the California Supreme Court held that an employee hired in California to work in Alaska, where he was injured, came within the jurisdiction of California workers' compensation law despite a contract clause providing that Alaska's Workers' Compensation Act would apply. The court ruled: "The attempted selection of the Alaska act as the governing law in . . . the contract is not available to the [employer]. A contract attempting to avoid the liability imposed by the California act is invalid." (1 Cal.2d at p. 260, citing § 27(a).) The United States Supreme Court, in affirming, against an attack, that the award of compensation to the employee offended the United States Constitution by a denial of due process and full faith and credit, stated: "California . . . had a legitimate public interest in controlling and regulating this employer-employee relationship in such fashion as to impose a liability upon the employer for an injury suffered by the employee, and in providing a remedy available to him in California. . . . [California] had as great an interest in affording adequate protection to this class of its population [California employees injured outside of California] as to employees injured within the state." (294 U.S. at pp. 542-543 [55 S.Ct. at p. 522].) Accordingly, an employer, such as the Marlins, cannot, simply by adding a contract clause requiring the approval of a third party, such as a commissioner, located out of state, deny an employee, such as Bowen, California workers' compensation benefits where the employee accepts an offer of employment in California. To permit the use of

---

[14]"Section 27(a). 'No contract . . . shall exempt the employer from liability for the compensation fixed by this act. . . .' " (*Alaska Packers Assn.* v. *Indus. Acc. Com.* (1934) 1 Cal.2d 250, 254 [34 P.2d 716].)

such a contract clause to defeat an employee's claim for benefits would violate section 5000 prohibiting contracts exempting employers from liability under the California Workers' Compensation Act and frustrate California's interests in protecting employees hired in California and injured elsewhere.

In keeping with the spirit of the Workers' Compensation Act, as reflected in the authorities cited, including those of the WCAB, we conclude that under sections 3600.5 and 5305 an employee who is a professional athlete residing in California, such as Bowen, who signs a player's contract in California furnished to the athlete here by an out-of-state team, is entitled to benefits under the act for injuries received while playing out of state under the contract. This is so even though the team has not yet signed the contract, and, as a condition of the contract, a third party such as the commissioner of the sport must approve the contract.

### DISPOSITION

The decision of the Workers' Compensation Appeals Board is annulled. The matter is remanded for further proceedings consistent with this opinion.

Nott, Acting P. J., concurred.

**ZEBROWSKI, J.**—I concur in the majority opinion, which masterfully and comprehensively reviews the authorities bearing on this important issue. I concur separately simply to note that the course of case law development in this area has unnecessarily complicated the law, and that the detailed contractual analyses presented in the briefs, to which the majority opinion properly responds, should not be necessary in every future case.

Labor Code section 3600.5 appears in chapter 3 of part 1 ("Conditions of Compensation Liability"). It provides that an employee injured out of state during the course of his employment is entitled to compensation under California's workers' compensation laws if he "has been *hired* . . . in the state." (Italics added.) Labor Code section 5305, by contrast, is contained in chapter 1 ("Jurisdiction") of part 4 ("Compensation Proceedings"). This chapter begins by defining the "exclusive jurisdiction" of the Workers' Compensation Appeals Board (WCAB). (Lab. Code, § 5300.) Section 5305 complements other sections (see, e.g., Lab. Code, § 3602) to confirm that the exclusive subject matter jurisdiction of the WCAB extends to out-of-state employee injuries "where . . . the *contract of hire* was *made* in this state." (Italics added.)

The effect of placing exclusive subject matter jurisdiction in the WCAB is to displace the subject matter jurisdiction of the California superior court.

(Cf., e.g., *City of Moorpark* v. *Superior Court* (1998) 18 Cal.4th 1143 [77 Cal.Rptr.2d 445, 959 P.2d 752].) If the "contract of hire" was not "made in this state," subject matter jurisdiction would not reside in the workers' compensation system, but would instead remain in the California superior court. (See Cal. Const., art. VI, § 10; art. XIV, § 4.) If that were the situation, a tort claim filed by petitioner against the Marlins in superior court would not be barred by workers' compensation exclusivity. What theories petitioner might advance and what defenses the Marlins might interpose have not been briefed. (Cf. *Wattenbarger* v. *Cincinnati Reds, Inc.* (1994) 28 Cal.App.4th 746 [33 Cal.Rptr.2d 732] [pitcher could sue for negligent instruction causing injury to arm during tryout; *Laeng* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771 [100 Cal.Rptr. 377, 494 P.2d 1] not cited].) The record in this case does suggest the salient facts that petitioner received no workers' compensation benefits from either Florida or New York and that petitioner could obtain personal jurisdiction over the Marlins (as opposed to subject matter jurisdiction over the case) in a California superior court. Hence it appears that, if the Marlins are correct that the workers' compensation laws do not apply, then a petitioner such as this petitioner could advance whatever claims he might have against the Marlins in superior court.

One might expect, in the typical case, that an employer such as the Marlins would argue in favor of workers' compensation exclusivity in order to avoid the need to defend such lawsuits. Instead, taking what appears to be a narrow view of this case alone, perhaps because the statute of limitations may have run in this particular instance, the Marlins argue that petitioner's claim does not fall within workers' compensation jurisdiction. This is quite contrary to the widespread contemporary preference of employers for the workers' compensation forum rather than the judicial forum, and not likely what the Marlins would be arguing had petitioner returned to California and sued. Were we to accept the Marlins' view, and establish it as controlling precedent, the likely result would be that in future cases the Marlins (as well as other professional sports teams) would have to defend themselves against tort claims in superior court instead of against workers' compensation claims before workers' compensation judges. (Cf. *Wattenbarger* v. *Cincinnati Reds, Inc., supra,* 28 Cal.App.4th 746.) Some of such cases might have merit and many might not, but in any event the courts and not the WCAB would provide the forum.

This result does not follow, however, because the statutes cannot be construed to leave cases such as this one within the jurisdiction of the superior court, although some of the case law is misleading. For example, the Court of Appeal decision in *Ledbetter Erection Corp.* v. *Workers' Comp. Appeals Bd.* (1984) 156 Cal.App.3d 1097 [203 Cal. Rptr. 396], was decided

after the Supreme Court decision in *Laeng* v. *Workmen's Comp. Appeals Bd.*, *supra*, 6 Cal.3d 771, but *Ledbetter* does not cite or follow *Laeng*. Instead, *Ledbetter* relies on the earlier Supreme Court opinion in *Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 429 [55 Cal.Rptr. 248, 421 P.2d 96]. *Reynolds*, by contrast to the later decision in *Laeng*, stated that "[a] contract of employment is governed by the same rules applicable to other types of contracts, including the requirements of offer and acceptance." (*Reynolds, supra*, 65 Cal.2d at p. 433.) *Reynolds* then applied these common law contract rules to the workers' compensation issue before it. *Ledbetter*, following *Reynolds*, also applied common law contract principles to a workers' compensation issue. More recently *Janzen* v. *Workers' Comp. Appeals Bd.* (1997) 61 Cal.App.4th 109 [71 Cal.Rptr.2d 260] also discussed common law contract formation principles in the course of determining jurisdiction pursuant to Labor Code section 5305, although leavened by citation to Labor Code section 3202's direction that the workers' compensation laws are to be construed liberally in favor of coverage. In *Laeng*, however, the Supreme Court departed from the view stated in *Reynolds,* and belatedly followed in *Ledbetter*, that common law contract principles govern workers' compensation issues. Instead, the Supreme Court ruled in *Laeng* that "an 'employment' relationship sufficient to bring the [workers' compensation statutes] into play cannot be determined simply from technical contractual or common law conceptions of employment but must instead be resolved by reference to the history and fundamental purposes underlying the [workers' compensation statutes] . . . ." (*Laeng, supra*, 6 Cal.3d 771, 777.) According to *Laeng*, the issue is one of statutory interpretation rather than common law contract. This holding from *Laeng* was recently cited with approval by the Supreme Court in *Arriaga* v. *County of Alameda* (1995) 9 Cal.4th 1055, 1061 [40 Cal.Rptr.2d 116, 892 P.2d 150]. In the future, therefore, it should be possible to disregard the approach of cases such as *Reynolds* and *Ledbetter*, and to jettison the lengthy technical analyses of common law concepts of offer and acceptance, conditions precedent and conditions subsequent, qualified offers, who is offeror and who is offeree, the effect of specific contractual terms, etc., that characterize the briefing in this case. Instead, the focus can be placed on whether a relationship was formed in California which was intended by the Legislature to be within the jurisdiction of the workers' compensation system rather than within the jurisdiction of the courts.

Whether petitioner's "contract of hire" was "made in this state" within the meaning and intent of Labor Code section 5305 determines which forum has subject matter jurisdiction. If the workers' compensation system (rather than the court system) has subject matter jurisdiction, then whether petitioner was "hired" in California within the meaning and intent of Labor Code section 3600.5 determines his entitlement to benefits. Although these two questions

of "hired" and "contract for hire" may not be distinguishable from each other, both are collectively distinguishable from the question of whether a common law contract was formed, where it was formed, when it was formed, what its terms were, etc. (Cf. *Laeng* v. *Workmen's Comp. Appeals Bd.*, *supra*, 6 Cal.3d 771 [common law principles do not necessarily control statutory interpretation of worker's compensation law].) For the remedial purposes of workers' compensation law, the Legislature has expressly directed that terms such as "hired" and "contract of hire" be liberally construed to extend benefits to persons injured during the course of their employment. (Lab. Code, § 3202.) Hence " '[i]f a provision in [the workers' compensation statutes] may be reasonably construed to provide coverage or payments, that construction should usually be adopted even if another reasonable construction is possible.' . . . The rule of liberal construction . . . requires that we liberally construe [the workers' compensation statutes] 'in favor of *awarding work*[*ers'*] *compensation*, not in permitting civil litigation. . . .' " (*Arriaga* v. *County of Alameda*, *supra*, 9 Cal.4th 1055, 1065.) Petitioner was scouted and recruited in California and signed his several contract documents in California. The language of the workers' compensation statutes can reasonably be construed as intended to cover this situation. Hence petitioner is entitled to workers' compensation benefits, rather than entitled to sue.